FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

2021 JUN -4  AM 8: 52

MARGARET BOTKINS, CLERK
CHEYENNE

JESSICA ANN FOX, as Personal
Representative of the Estate of Iletha Ann
Hamang, Deceased, and STAGELINE
EXPRESS, INC.,

        Plaintiffs,

v.

VLADIMIR MAKARCHUK, EEZ
TRUCKING, INC., and UNITED SHIPPERS
ASSOCIATES, INC.,

        Defendants.

Case No.  19-CV-207-ABJ

---

EEZ TRUCKING, INC.,

        Counterclaim Plaintiff,

v.

STAGELINE EXPRESS, INC.

        Counterclaim Defendant.

---

EEZ TRUCKING, INC.,

        Third-Party Plaintiff,

v.

CARL HECTOR,

        Third-Party Defendant.

---

## ORDER GRANTING DEFENDANT UNITED SHIPPERS ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT

---

1

This matter comes before the Court on Defendant United Shippers Associates, Inc. Motion for Complete Summary Judgment. ECF No. 67. The Court held oral argument on June 3, 2021. Having considered the filings, oral arguments, applicable law, and being otherwise fully advised, the Court hereby finds the Motion should be **GRANTED**.

**Background**

On October 7, 2019, Jessica Ann Fox, as Personal Representative of the Estate of Iletha Ann Hamang, deceased, and Stageline Express, Inc. (Stageline) filed their complaint. ECF No. 1. The complaint covers claims arising out of a two-vehicle collision, which occurred on September 17, 2018, on westbound I-80, near Milepost Marker 14.85 in Uinta County, Wyoming. *Id.* at 1. Ms. Fox and Stageline allege the accident occurred due to the negligence and willful and wanton misconduct of EEZ, Vladimir Makarchuk (Mr. Makarchuk), and United Shippers Associates, Inc. d/b/a STC Logistics (United Shippers or STC). *Id.* at 1–2. According to Ms. Fox and Stageline, Mr. Makarchuk was driving a commercial motor vehicle under the authority of EEZ and transporting goods in interstate commerce on behalf of United Shippers. *Id.* at 2. The complaint alleges EEZ, Mr. Makarchuk, and United Shippers caused a collision with Carl Hector, who was operating a commercial motor vehicle owned by Stageline. *Id.* Iletha Hamang (Ms. Hamang) was a passenger in the Stageline vehicle. *Id.* Ms. Fox and Stageline allege she was "catastrophically and permanently injured" in the accident. *Id.* Stageline contends it suffered damages to its property and business, including lost revenue, property damage, and incidental expenses. *Id.*

Ms. Fox and Stageline assert United Shippers is a freight forwarder under 49 U.S.C. § 13102(8), which makes United Shippers responsible for the transportation, and consequences

that arise during transportation, of its loads from the place of receipt to the place of destination. *Id.* at 4.

According to Ms. Fox and Stageline, on the day of the accident, Mr. Hector was operating the Stageline truck on westbound I-80, just west of mile marker 15 in the right-hand lane. *Id.* Ms. Hamang was a permissive passenger and his long-term companion. *Id.* The same day, Mr. Makarchuk was operating a truck owned or leased by EEZ. *Id.*

Ms. Fox and Stageline allege the EEZ truck Mr. Makarchuk was operating experienced a mechanical breakdown from a clogged fuel filter, which prevented the truck from having enough power to maintain a safe highway driving speed. *Id.* at 5. The complaint states Mr. Makarchuk ignored the mechanical problems and continued driving the truck at a slow rate of speed on the right-hand shoulder of westbound I-80. *Id.* Ms. Fox and Stageline further assert Mr. Makarchuk caused the accident when he steered the EEZ truck from the right-hand shoulder into the right-hand westbound lane of I-80 even though he was traveling at a slow rate of speed, traffic was not clear, and Mr. Hector had the right-of-way in the right-hand lane. *Id.* Ms. Fox and Stageline bring claims of negligence against Mr. Makarchuk, EEZ, and United Shippers for negligence; respondeat superior against EEZ and United Shippers; negligent hiring, training, and entrustment against EEZ[1] and United Shippers; and seek punitive damages against Mr. Makarchuk and EEZ. *Id.* at 6–10.

EEZ filed its counterclaim and third-party complaint on March 12, 2021. ECF Nos. 56–57. It denies all liability for the accident and contends Stageline's and Mr. Hector's negligence caused the collision. *Id.* at 13. According to EEZ, Mr. Hector acted willfully, wantonly, negligently, and unreasonably by failing to keep a proper lookout; failing to yield to a vehicle in his lane; driving

---

[1] Ms. Fox and Stageline later dismissed this claim as to EEZ only. ECF Nos. 58, 60.

at an improper rate of speed for the conditions; failing to drive with due care and caution;

following too closely; failing to take all possible precautions to avoid any collision with other

motor vehicles; failing to make and/or renew observations of the conditions of traffic; failing to

slow for traffic; failing to pay attention to the roadway; failing to maintain control of his vehicle;

failing to avoid an impact with another vehicle; violating codes, ordinances, and/or regulations.

*Id.* at 13–14. According to EEZ, Mr. Hector's negligence caused damages to the EEZ vehicle. *Id.*

at 14. EEZ brings counterclaims against Stageline for negligence; respondeat superior; and

negligent hiring, training, supervision, and entrustment. *Id.* at 14–17. It seeks punitive damages

against Stageline. *Id.* at 18. EEZ brings a third-party claim against Mr. Hector for negligence and

seeks punitive damages from Mr. Hector as well. *Id.* at 21–23.

### Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of

fact is genuine if a reasonable juror could resolve the disputed fact in favor of either side. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is material if under

the substantive law it is essential to the proper disposition of the claim. *Adler v. Wal-Mart Stores,*

*Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When the Court considers the evidence presented by

the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are

to be drawn in the non-movant's favor." *Anderson*, 477 U.S. at 255.

The party moving for summary judgment has the burden of establishing the nonexistence of a

genuine dispute of material fact. *Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013). The

moving party can satisfy this burden by either (1) offering affirmative evidence that negates an

essential element of the nonmoving party's claim, or (2) demonstrating that the nonmoving

4

party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* Fed. R. Civ. P. 56(c)(1)(A)–(B).

Once the moving party satisfies this initial burden, the nonmoving party must support its contention that a genuine dispute of material fact exists either by (1) citing to particular materials in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute. *See id.* The nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive a summary judgment motion, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Further, when opposing summary judgment, the nonmoving party cannot rest on allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine dispute of material fact for trial. *See Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009).

When considering a motion for summary judgment, the court's role is not to weigh the evidence and decide the truth of the matter, but rather to determine whether a genuine dispute of material fact exists for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the court. *Id.* at 255.

**Discussion**

**1.  United Shippers' Motion**

United Shippers seeks summary judgment on Count I (negligence), Count II (respondeat superior), and Count III (negligent hiring, training, and entrustment) as those claims are asserted

5

against United Shippers. ECF No. 67 at 2.[2] United Shippers argues summary judgment is appropriate because: (1) all of Ms. Fox's and Stageline's claims against it are Wyoming common law tort claims preempted by federal law; (2) Ms. Fox and Stageline have failed to produce the evidence necessary to establish the existence of a master-servant type relationship between United Shippers and either EEZ, Inc. or Mr. Makarchuk required to hold United Shippers vicariously liable under a respondeat superior theory; (3) Ms. Fox and Stageline have failed to produce the requisite evidence, including a necessary expert opinion as to the standard of care, to show United Shippers breached any duty it owed them as a federal registered transportation company; and (4) Ms. Fox and Stageline have failed to produce the requisite evidence to support their negligent hiring, training, and entrustment claims against United Shippers. *Id.* at 2–3.

Ms. Fox's and Stageline's complaint alleges negligence against United Shippers but does not allege any specific negligent conduct on the part of United Shippers individually. *Id.* (citing ECF No. 1 at ¶¶ 20–25). United Shippers' alleged liability is based on its purported role as a federally registered freight forwarder arranging for transportation of goods by EEZ. *Id.* at 4 (citing ECF No. 1 at ¶¶ 7, 20). Ms. Fox's and Stageline's experts offered no opinion as to United Shippers liability. *Id.* (citing Exhibit C, Larry Baareman Report at 38–40; Exhibit F, Greg Edgcombe Report at 2). Defense expert Roger Allen found United Shippers was not responsible for the collision. *Id.* (citing Exhibit G, Roger Allen Report at 15). Ms. Fox and Stageline did not depose any United Shippers representatives during fact discovery. *Id.* at 5.

The complaint asserts at all relevant times, United Shippers was a freight forwarder for the load Mr. Makarchuk was transporting and was responsible for the safe transportation until the load was delivered. *Id.* (citing ECF No. 1 at ¶ 28). United Shippers holds two operating

---

[2] The Court notes Ms. Fox and Stageline do not seek punitive damages against United Shippers. *See generally* ECF No. 1.

authorities issued by the United States Department of Transportation Federal Motor Carrier

Safety Administration (FMCSA): FF-11964, authorizing it to operate as a freight forwarder (the

Freight Forwarder License) and MC-496589-B, to operate as a broker (the Broker License).

According to United Shippers, at the time of the accident EEZ was transporting goods under

a Broker-Carrier Agreement entered into on September 10, 2018, between STC as broker and

EEZ as carrier. *Id.* at 6 (citing Exhibit J, Broker-Carrier Agreement). This agreement states STC

is a "licensed ICC Property Broker, MC 496589-B[.]" *Id.* (citing Broker-Carrier Agreement;

Exhibit I, United Shippers' Broker License). STC is a subsidiary of United Shippers. *Id.* (citing

Exhibit K Frank Ferlito Affidavit at ¶ 1). Mr. Allen confirmed United Shippers was operating as

a broker. *Id.* (citing Exhibit L, Deposition of Roger Allen at 65:08–68:05). Maryana Zilinskiy,

the owner of EEZ, testified to the same. *Id.* (citing Exhibit M, Deposition of Maryana Zilinskiy

at 83:01–85:08).

Frank Ferlito, Vice President of Business Development for STC, stated in an affidavit that

STC acted for this transaction as a broker under United Shippers' broker license. *Id.* (citing

Ferlito Affidavit at ¶ 2). In pertinent part, the Broker-Carrier Agreement states:

> WHEREAS, BROKER, is a licensed BROKER of general commodities and is
> engaged in the business of *negotiating* and conducting the transportation of
> regulated commodities in interstate commerce over public highways; and
> WHEREAS, CARRIER is engaged in interstate commerce, transporting general
> commodities as a Contract Carrier under operating rights issues [*sic*: issued] by the
> Interstate Commerce Commission.

*Id.* (citing Broker-Carrier Agreement).

Under this agreement, United Shippers and EEZ had equal rights to terminate the agreement

upon thirty days' notice to the other party. *Id.* at 7 (citing Broker-Carrier Agreement at ¶ 1). The

payment terms in the agreement are similar to those often found in an independent contractor

relationship, not an employer-employee relationship. *Id.* (citing Broker-Carrier Agreement at ¶

7

2–3). United Shippers did not assume any affirmative safety duties, and EEZ had to furnish its own equipment. *Id.* (citing Broker-Carrier Agreement at ¶ 6). Also, the agreement expressly establishes an independent contractor relationship between United Shippers and EEZ. *Id.* (citing Broker-Carrier Agreement at ¶ 8). EEZ had not hauled any loads for United Shippers prior to the load involved in the accident. *Id.* (citing Zilinskiy Dep. at 83:14–18; 87:13–17).

For the negligent hiring, training, and entrustment claim, United Shippers argues there is no evidence it furnished, provided, or entrusted any commercial vehicle to Mr. Makarchuk. *Id.* at 8. Additionally, no expert has opined United Shippers did anything wrong. *Id.* at 9.

Ms. Fox's and Stageline's claims are preempted by the Federal Aviation Administration Authorization Act (FAAAA), 49 U.S.C. § 14501. United Shippers cites 49 U.S.C. § 14501(c)(1):

> **(1) General rule.**--Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

*Id.* at 9–10. United Shippers argues the "related to" language is a broad preemptive provision that includes state laws concerning a motor carrier's "transportation of property" and directly or indirectly "having a connection with or reference to" carrier "rates, routes, or services[.]" *Id.* at 10 (quoting *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260–61) (2013)). Common law negligence claims are state law claims that may be preempted. *Id.* (citing *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 281–82 (2014)). United Shippers cites multiple district court cases for the contention state common law negligence claims, including negligent hiring and entrustment claims, are directly "related to" a broker's "services" and preempted under § 14501(c). All of Ms. Fox's and Stageline's claims against United Shippers "refer to" its performance of

8

"services" involving hiring a motor carrier to transport goods. Thus, all the claims are preempted, regardless of whether United Shippers acted under its Freight Forwarder License or Broker License. *Id.* at 11.

Next, United Shippers argues the respondeat superior claim fails even if preemption does not apply. *Id.* Wyoming law requires the existence of a master-servant type employment relationship to find respondeat superior liability. *Id.* (citing *Combined Ins. Co. of Am. v. Sinclair*, 584 P.2d 1034, 1042 (Wyo. 1978)).

EEZ was an independent contractor, not a servant, of United Shippers. *Id.* at 12. An independent contractor is "one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer except as to the result of the work." *Id.* (citing *Franks v. Indep. Prod. Co.*, 2004 WY 97, ¶ 10, 96 P.3d 484, 490 (Wyo. 2004)). "The overriding consideration in distinguishing between master-servant relationships and employer-independent contractor relationships is the employer's right to control the means and manner of the work." *Singer v. New Tech Eng'g L.P.*, 2010 WY 31, ¶ 9, 227 P.3d 305, 309 (Wyo. 2010). Generally, "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." *Id.* (citing *Merit Energy Co., LLC v. Horr*, 2016 WY 3, ¶ 14, 366 P.3d 489, 494 (Wyo. 2016)).

An express contract is important in determining the employment relationship, but so are additional factors including method of payment; right to terminate the relationship without incurring liability; furnishing of tools and equipment; scope of work; control of the premises where the work is to be done; and whether the worker devotes all his efforts to the position or performs work for others. *Id.* at 12–13 (citing *Merit Energy* ¶¶ 19–20, 366 P.3d at 496). Ms. Fox

and Stageline have failed to provide any evidence the relationship between United Shippers and EEZ was anything more than an independent contractor relationship. *Id.* at 13.

The "undisputed" evidence evinces an independent contractor relationship. *Id.* at 13–14. The payment terms reflected an independent contractor relationship. *Id.* at 13 (citing Broker-Carrier Agreement at ¶ 3). Both parties had equal rights to terminate the working relationship. *Id.* (citing Broker-Carrier Agreement at ¶ 1). Under the agreement, EEZ was responsible for providing the equipment. *Id.* (citing Broker-Carrier Agreement at ¶ 6). The scope of the work was transporting commodities in interstate commerce. *Id.* (citing Broker-Carrier Agreement at ¶ 2). Ms. Fox and Stageline have not provided any evidence to show EEZ only worked for United Shippers. *Id.* United Shippers had no contractual right of control over the EEZ truck or the means and manner of EEZ's performance. *Id.* (citing Broker-Carrier Agreement). As Ms. Fox and Stageline failed to produce any evidence of a master-servant relationship between United Shippers and EEZ, there is no evidence to create a genuine dispute of material fact. *Id.* at 14.

United Shippers was not responsible for Mr. Makarchuk merely because it held operating authorities from the FMCSA. *Id.* An applicable statute or regulation may confirm a duty of care based on relevant common law governing an employer-independent contractor relationship but cannot impose additional duties. *Id.* (citing *Franks v. Indep. Prod. Co.*, 2004 WY 97, ¶ 21, 96 P.3d 484, 494 (Wyo. 2004)). This Court previously rejected the argument the FMCSRs create non-delegable duties owed by a shipper who has its own motor carrier authority, rendering it into a "statutory employer" of an independent contractor motor carrier for vicarious liability purposes. *Id.* at 14–15 (citing *Krauchanka v. FedEx Freight, Inc.*, No. 2:16-CV-0013-SWS, 2017 WL 5203045, at *6 (D. Wyo. Apr. 14, 2017)). "A transportation company may have authority to act as a shipper, broker, or carrier, and the Court must focus on the specific transaction at issue,

not whether [the broker] acts as a motor carrier in other transactions." *Id.* at 15 (citing *Harris v. Velichkov*, 860 F. Supp. 2d 970, 979 (D. Neb. 2012), *aff'd sub nom. Harris v. FedEx Nat. LTL, Inc.*, 760 F.3d 780 (8th Cir. 2014)). EEZ was the motor carrier for the transaction involved in the collision, so Ms. Fox and Stageline cannot hold United Shippers vicariously liable. *Id.*

Ms. Fox and Stageline have not presented evidence that United Shippers' negligence caused the accident. *Id.* They produce no applicable standard of care or conduct on the part of United Shippers. *Id.* at 16. Whether United Shippers was acting as a broker or freight forwarder, the standard of care is predicated on complex sets of federal statutes and regulations. *Id.* This is not within the common knowledge of a juror and would require expert testimony. *Id.* (citing *State ex rel. Pape v. Hockett*, 61 Wyo. 145, 161–62, 156 P.2d 299, 304 (1945); *Long v. Big Horn Const. Co.*, 75 Wyo. 276, 284, 295 P.2d 750, 753 (1956); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–94 (1993)). While Ms. Fox and Stageline retained Mr. Baareman as an expert on the FMCSRs and compliance, Mr. Baareman's report offered no opinions on United Shippers, which he admitted. *Id.* at 17 (citing Baareman Report at 38–40; Exhibit N, Deposition of Larry Baareman at 97:06–12). Given Mr. Baareman's lack of opinion as to United Shippers and Mr. Allen's opinion finding United Shippers did not cause the accident, there is no genuine dispute United Shippers did not cause Ms. Fox's and Stageline's injuries. *Id.*

Lastly, Ms. Fox and Stageline have failed to provide any evidence United Shippers negligently hired, trained, or entrusted a commercial motor vehicle to Mr. Makarchuk. *Id.* at 18. United Shippers had no direct relationship of any kind with Mr. Makarchuk. *Id.* Ms. Fox and Stageline must prove: (1) United Shippers was negligent in hiring EEZ; (2) EEZ or its servants negligently caused Ms. Fox's and Stageline's injuries; and United Shippers' negligence in hiring EEZ proximately caused the injuries. *Id.* (citing *Basic Energy Servs., L.P. v. Petroleum Res.*

11

*Mgmt., Corp.*, 2015 WY 22, ¶ 25, 343 P.3d 783, 790–91 (Wyo. 2015)). Because Ms. Fox and Stageline failed to establish United Shippers' standard of care or that it breached any duty, they have not made out a prima facie case United Shippers negligently hired EEZ. *Id.* at 19.

Ms. Fox and Stageline have failed to produce evidence United Shippers negligently trained Mr. Makarchuk. *Id.* Wyoming has not ruled on whether an injured party can bring a claim for negligent training. *Id.* (citing *Bogdanski v. Budzik*, 2018 WY 7, ¶ 20, 408 P.3d 1156, 1161 (Wyo. 2018)). Even if it is a valid claim under Wyoming law, Ms. Fox and Stageline have not produced evidence United Shippers was Mr. Makarchuk's employer or that United Shippers had any responsibility to train him. *Id.*

According to United Shippers, Ms. Fox and Stageline have not provided evidence showing United Shippers negligently entrusted a vehicle to Mr. Makarchuk. *Id.* at 20. The evidence is EEZ agreed it was responsible for equipment used in the transportation of goods under the Broker-Carrier Agreement. *Id.* (citing Broker-Carrier Agreement).

### 2. Ms. Fox's and Stageline's Response

At the time of the collision, the EEZ vehicle was under load with a shipment arranged by United Shippers, in its capacity as freight forwarder. ECF No. 70 at 3. United Shippers maintains dual authority with the Federal Motor Carrier Safety Administration as both a broker and freight forwarder. *Id.* As the owner of the freight, United Shippers provided a Bill of Lading, which detailed the various points of partial delivery and other instructions. *Id.* The Bill of Lading provided for delivery of a specific number of skis and pieces at four different locations and was a sealed load. *Id.* at 3–4 (citing Exhibit 4). The Rate Confirmation Sheet shows United Shippers, in its capacity as a freight forwarder, assembled and consolidated the load, ensuring it was sealed before being transported by EEZ. *Id.* at 4 (citing Exhibit 5).

Ms. Fox and Stageline contend their state law tort claims are not preempted by the FAAAA.

ECF No. 70 at 6. They assert United Shippers' argument that 49 U.S.C. § 14501 preempts state

law negligence claims has been rejected by numerous courts based on the United States Supreme

Court's decision in *Dan's City*, 569 U.S. at 260–61.

> Where, as in this case, Congress has superseded state legislation by statute, our task is to identify the domain expressly pre-empted. To do so, we focus first on the statutory language, which necessarily contains the best evidence of Congress' preemptive intent. The FAAAA's preemption clause prohibits enforcement of state laws related to a price, route, or service of any motor carrier with respect to the transportation of property. In *Rowe v. New Hampshire Motor Transp. Assn.*, 552 U.S. 364, 370 (2008), our reading of this language was informed by decisions interpreting the parallel language in the ADA's preemption clause. The phrase "related to," we said, embraces state laws "having a connection with or reference to" carrier "rates, routes, or services," whether directly or indirectly.
>
> At the same time, the breadth of the words "related to" does not mean the sky is the limit. We have refused to read the preemption clause of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1144(a), which supersedes state laws "related to any employee benefit plan," with an "uncritical literalism," else "for all practical purposes pre-emption would never run its course." And we have cautioned that § 14501(c)(1) does not preempt state laws affecting carrier prices, routes, and services in only a tenuous, remote, or peripheral manner.

*Id.* at 6–7 (citing *Dan's City*, 569 U.S. at 260–61) (internal citations and quotation marks

omitted) (cleaned up).

According to Ms. Fox and Stageline, the Ninth Circuit rejected the same argument United

Shippers makes in this case, finding state law negligence claims fall within the exception of 49

U.S.C. § 14501(c)(2)(A). *Id.* at 7–8 (citing *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d

1016 (9th Cir. 2020)). 49 U.S.C. § 14501(c)(2)(A) provides:

> **(2) Matters not covered.**--Paragraph (1)--
>
> > **(A)** shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with

> regard to minimum amounts of financial responsibility relating to insurance
> requirements and self-insurance authorization[.]

*Id.* at 8. Negligence claims arising out of the use of a motor vehicle are connected to the vehicle

and not preempted. *Id.* (citing *Miller*, 976 F.3d at 1025–27; *Loyd v. Salazar*, 416 F. Supp. 3d

1290 (W.D. Okla. 2019)).

Next, Ms. Fox and Stageline argue United Shippers operated as a freight forwarder and is

therefore responsible for EEZ's actions in causing the accident. *Id.* at 9. They agree that if the

Court determines United Shippers acted as a broker instead of a freight forwarder, it would be

entitled to summary judgment. *Id.*

49 U.S.C. § 13102 provides the applicable definitions:

> **(2) Broker.**--The term "broker" means a person, other than a motor carrier or an
> employee or agent of a motor carrier, that as a principal or agent sells, offers for
> sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise
> as selling, providing, or arranging for, transportation by motor carrier for
> compensation.
>
> . . .
>
> **(8) Freight forwarder.**--The term "freight forwarder" means a person holding
> itself out to the general public (other than as a pipeline, rail, motor, or water carrier)
> to provide transportation of property for compensation and in the ordinary course
> of its business—
>> **(A)** assembles and consolidates, or provides for assembling and consolidating,
>> shipments and performs or provides for break-bulk and distribution operations
>> of the shipments;
>> **(B)** assumes responsibility for the transportation from the place of receipt to
>> the place of destination; and
>> **(C)** uses for any part of the transportation a carrier subject to jurisdiction
>> under this subtitle.
>> The term does not include a person using transportation of an air carrier
>> subject to part A of subtitle VII.

*Id.* at 9–10.

Both property brokers and freight forwarders arrange for carriers to transport goods, but

brokers do not play a role in the assembly or carriage of goods. *Id.* at 10. Freight forwarders have

14

a role in the assembly, consolidation, break bulk, and distribution shipments. *Id.* They assume

responsibility for shipment from receipt to the place of destination and may act as a carrier. *Id.*

(citing *Transportation Revenue Mgmt., Inc. v. First NH Inv. Servs. Corp.*, 886 F. Supp. 884

(D.D.C. 1995)). Ms. Fox and Stageline cite to 49 U.S.C. § 14706(a)(2) for further clarification

on the operation of freight forwarders:

> **(2) Freight forwarder.**--A freight forwarder is both the receiving and delivering
> carrier. When a freight forwarder provides service and uses a motor carrier
> providing transportation subject to jurisdiction under subchapter I of chapter 135 to
> receive property from a consignor, the motor carrier may execute the bill of lading
> or shipping receipt for the freight forwarder with its consent. With the consent of
> the freight forwarder, a motor carrier may deliver property for a freight forwarder
> on the freight forwarder's bill of lading, freight bill, or shipping receipt to the
> consignee named in it, and receipt for the property may be made on the freight
> forwarder's delivery receipt.

*Id.* Defense expert Roger Allen testified that, pursuant to federal statute, freight forwarders are

responsible for organizing the load, organizing the transportation, and are responsible for the

transportation of the load. *Id.* at 10–11 (citing Allen Dep. at 66). He could not testify as to

whether United Shippers took the appropriate steps to confirm EEZ had the appropriate

insurance, authority, and equipment to transport the freight under United Shippers' seal. *Id.* at 11

(citing Allen Dep. at 70–72).

Ms. Fox and Stageline contend United Shippers' claim it acted as a broker is not supported

by the facts. *Id.* Its actions show it acted as a freight forwarder despite Mr. Ferlito's affidavit and

the Broker-Carrier Agreement it ignored. *Id.* The Bill of Lading issued by United Shippers shows

consolidation of freight and instructions for the delivery. *Id.* (citing Exhibit 4). The Rate

Confirmation establishes neither Mr. Makarchuk nor other EEZ personnel stacked or handled the

freight, the trailer was sealed by United Shippers, and the seal was not to be broken. *Id.* (citing

Exhibit 5). The Rate Confirmation states that EEZ would be subject to financial penalties if it did

not comply with United Shippers instructions, including a late or missed delivery, which shows United Shippers maintained control over the transportation of the freight. *Id.* (citing Exhibit 5). Ms. Zilinskiy testified United Shippers was the owner of the load, even though EEZ was transporting it. *Id.* at 12. Ms. Fox and Stageline conclude it was clear United Shippers was acting as a freight forwarder at the time of the accident. *Id.*

### 3. United Shippers' Reply

United Shippers argues Ms. Fox's and Stageline's authorities do not support the contentions they make. ECF No. 76 at 2. United Shippers acted as a broker in this transaction. (citing ECF No. 67 Exhibits J Broker-Carrier Agreement; K, Frank Ferlito Affidavit at ¶ 2; L, Allen Dep. at 67:13–68:04; M, Zilinskiy Dep. at 83:01–85:08). Mr. Makarchuk testified he did not know the nature of EEZ's relationship with United Shippers. *Id.* (citing ECF No. 70 Exhibit 7, Makarchuk Dep. at 121:01–06).

Ms. Fox and Stageline incorrectly claim a "Truck Manifest" is a Bill of Lading. *Id.* (citing ECF No. 70 at 3–4, 11 and Exhibit 4). United Shippers explains there are four Bills of Lading for four different consignees, which all state "Straight Bill of Lading Not Negotiable." *Id.* (citing Exhibit A, Bills of Lading). Both Ms. Fox's and Stageline's expert Larry Baareman and United Shippers' representative Frank Ferlito identify the document Ms. Fox and Stageline point to as a Truck Manifest, not a Bill of Lading. *Id.* (citing ECF No. 67 Exhibits C, Larry Baareman Report at 29–30; K, Ferlito Affidavit at ¶ 3; ECF No. 70 Exhibit 4).

The Rate Confirmation does not state who assembled, consolidated, or sealed the load transported by EEZ. *Id.* at 3 (citing ECF No. 70 Exhibit 5). The affidavit from United Shippers stating it did not is undisputed. *Id.* (citing ECF No. 67 Exhibit K, Ferlito Affidavit at ¶ 5). Mr. Makarchuk testified he believed he closed the doors. *Id.* (citing ECF No. 70 Exhibit 7,

16

Makarchuk Dep. at 122:01). Ms. Zilinskiy clarified in her deposition that she did not know who owned the load. *Id.* (citing ECF No. 67 Exhibit M, Zilinskiy Dep. at 86:20–87:12). A mere scintilla of evidence in support of the nonmoving party's position is [] insufficient to create a genuine issue of material fact." *Id.* (quoting *Gromala v. FedEx Ground Packages Sys., Inc.*, No. 06-CV-269-B, 2007 WL 9709809, at *2 (D. Wyo. Oct. 10, 2007)).

Ms. Fox's and Stageline's state tort claims are preempted by the FAAAA and not saved by the safety exception. *Id.* at 4. They omit relevant portions of *Miller*. *Id.* The *Miller* Court concluded "a claim that imposes an obligation on brokers at the point at which they arrange for transportation by motor carrier has a 'connection with' broker services." *Id.* (quoting *Miller*, 976 F.3d at 1024). It acknowledged "there is no question that common-law claims are within the scope of the preemption clause." *Id.* (quoting *Miller*, 976 F.3d at 1025). Thus, the question is not whether Ms. Fox's and Stageline's claims are preempted by the FAAAA – *Miller* finds they are – but whether they are saved by the FAAAA's safety exception, 49 U.S.C. § 14501(c)(2)(A). *Id.*

United Shippers argues Ms. Fox and Stageline misinterpret *Loyd*. *Id.* at 5. They cite to *Loyd's* holding regarding preemption under the Interstate Commerce Commission Termination Act, rather than *Loyd's* holding regarding FAAAA preemption and the safety exception. *Id.* (citing 416 F. Supp. 3d at 1294–95). The *Loyd* Court found the plaintiff's state tort negligent hiring claim against a broker "directly relate to the services AGS provided as a broker in the transportation of property. Thus, Plaintiff's claim is expressly preempted by § 14501(c)(1) of the FAAAA." *Id.* (quoting *Loyd*, 416 F. Supp. 3d at1298). The *Loyd* Court also concluded the plaintiff's negligence claim against the broker was "not saved from federal preemption by the safety regulatory exception of § 14501(c)(2)(A)." *Id.* (quoting *Loyd*, 416 F. Supp. 3d at 1300). Therefore, *Loyd* supports United Shippers' position, not Ms. Fox's and Stageline's. *Id.*

17

All of Ms. Fox's and Stageline's claims against United Shippers are preempted under 49 U.S.C. § 14501(c)(1). *Id.* at 6 (citing *Loyd*, 416 F. Supp. 3d at 1298; *Miller*, 976 F.3d at 1024–25). State tort negligence claims against a broker are predicated on a broker's alleged negligence in providing freight brokerage services such as arranging for transportation of goods by a motor carrier, § 14501(c)(2)(A)'s safety exception cannot be given a reading saving claims from preemption because it "would be an unwarranted extension of the exception to encompass a safety regulation concerning motor carriers rather than one concerning motor vehicles." *Id.* (citing *Loyd*, 416 F. Supp. 3d at 1300).

The undisputed admissible evidence shows United Shippers acted as a broker, not a freight forwarder. *Id.* Ms. Fox and Stageline had the opportunity during discovery to ask United Shippers whether it acted as a broker or a freight forwarder. *Id.* They did not do so and try to twist the record to support their arguments. *Id.* They refer to allegations in their complaint, and allegations in a complaint cannot prevent summary judgment. *Id.* (citing *Jackson v. Volvo Trucks N. Am., Inc.*, 462 F.3d 1234, 1242 (10th Cir. 2006)).

Ms. Fox and Stageline cite to 49 U.S.C. § 14706(a)(2) on the operation of a freight forwarder. *Id.* at 7 (citing ECF No. 70 at 10).

> Pursuant to 49 U.S.C. § 14706(a)(1), a motor carrier may be held liable for property damage to a shipment by "the person entitled to recover under the receipt or bill of lading." *See OneBeacon Ins. Co. v. Haas Industries, Inc.,* 634 F.3d 1092, 1097–98 (9th Cir.2011) (standing for purposes of a Carmack claim is determined by the bill of lading). Plaintiff was not the shipper and has no relationship to the shipment that Defendant Juodzevicius was hauling at the time of the accident, therefore he cannot assert a Carmack claim against TSG.

*Kavulak v. Laimis Juodzevicius, A.V. Inc.*, 994 F. Supp. 2d 337, 343 (W.D.N.Y. 2014). United Shippers argues Ms. Fox and Stageline are not entitled to make claims for damages to the property transported by EEZ, so § 14706 is not relevant.

18

Ms. Fox and Stageline turn to defense expert Roger Allen regarding the differences between a broker and a freight forwarder. *Id.* (citing ECF No. 70 at 10–11). They omit, however, Mr. Allen's testimony that United Shippers marketed itself as a broker in the transaction with EEZ. *Id.* (citing ECF No. 67, Exhibit L at 67:13–68:04). He found United Shippers did nothing wrong, and Ms. Fox and Stageline have not presented evidence disputing this. *Id.* (citing ECF No. 67, Exhibit G, Allen Report at 15). The Broker-Carrier Agreement supports Mr. Allen's testimony and the Ferlito Affidavit that United Shippers acted as a broker. *Id.* When a transportation company holds multiple operating authorities, the Court must focus on the specific transaction at issue. *Id.* at 7–8 (citing *Harris v. Velichkov*, 860 F. Supp. 2d 970, 979 (D. Neb. 2012), *aff'd sub nom. Harris v. FedEx Nat. LTL, Inc.*, 760 F.3d 780 (8th Cir. 2014)).

Next, the Rate Confirmation, Bills of Lading, and the undisputed Ferlito Affidavit confirm the pickup location for the freight was not an STC facility. *Id.* at 8 (citing ECF No. 70 Exhibit 5, Rate Confirmation; ECF No. 76, Exhibit A, Bills of Lading; ECF No. 67, Exhibit K, Ferlito Affidavit at ¶ 4). Furthermore, the Bills of Lading and the undisputed affidavit of United Shippers establish the cargo was sent to Marshalls stores, not an STC facility. *Id.* (citing ECF No. 76, Exhibit A, Bills of Lading; ECF No. 67, Exhibit K, Ferlito Affidavit at ¶¶ 3–4). Ms. Fox and Stageline argue the Rate Confirmation shows Mr. Makarchuk and EEZ did not stack or handle the freight, STC sealed the trailer, and the seal was not to be broken. *Id.* (citing ECF No. 70 at 11 and Exhibit 5). The Rate Confirmation only establishes United Shippers instructed EEZ not to stack or handle the freight and not to break the seal; it does not establish United Shippers stacked or handled the freight or affixed a seal. *Id.*

The undisputed Ferlito Affidavit states United Shippers "never took possession of, handled, consolidated, or repackaged the Freight prior to the time EEZ . . . picked up the Freight at the

pickup location." *Id.* (citing ECF No. 67, Exhibit K, Ferlito Affidavit at ¶ 5). This is not disputed

by Ms. Zilinskiy's testimony she had "no idea" whether United Shippers assembled, packed, or

handled the freight. *Id.* (citing ECF No. 67, Exhibit M, Zilinskiy Dep. at 87:08–12). The same is

true of Mr. Makarchuk's testimony that he closed the doors of the trailer after picking up the load

and did not recall if the load was sealed. *Id.* at 9 (citing ECF No. 70, Exhibit 7, Makarchuk Dep.

at 121:16–122:10). Ms. Fox's and Stageline's assertions United Shippers handled the freight and

affixed the seal are not supported by any of the evidence. *Id.* Ms. Zilinskiy's testimony is as

follows:

> Q Do you know who owned the load at issue that your brother was hauling at
> the time of the accident?
> A What do you mean "owned the load"?
> Q Who owned it? Who had possession, title?
> A STC.
> Q Okay.
> A I don't know. You – we pick up from a warehouse location that they give
> us an address from. We – first of all, I sign this. They give us an address.
> We go to the address. We get our paperwork. The driver delivers it. He gets
> paperwork back. And just exactly what I just explained it.
> Q Did STC assemble the load? Did they pack it?
> A I have no idea.
> Q Do you know if they loaded it?
> A I have no idea.

*Id.* (quoting ECF No. 67, Exhibit M, Zilinskiy Dep. at 86:20–87:12). Additionally, "[t]hat FXF

monitored the performance of C&M and its drivers to insure satisfactory performance of the

Transportation Agreement is insufficient to impose vicarious liability." *Id.* (quoting *Krauchanka*

*v. FedEx Freight, Inc.*, No. 2:16-CV-0013-SWS, 2017 WL 5203045, at *5 (D. Wyo. Apr. 14,

2017)). United Shippers concludes the evidence on record and reasonable inferences drawn

therefrom show it acted as a broker. *Id.* Ms. Fox and Stageline have not supported their

allegation United Shippers acted as a freight forwarder with any evidence sufficient to create a

genuine issue of material fact. *Id.* Summary judgment is appropriate. *Id.*

### 4. Oral Argument

The only new dispute at oral argument regarded United Shippers' submission of the purported four Bills of Lading. Ms. Fox and Stageline argued the reported unsigned Bills of Lading United Shippers provided in its reply brief were not provided in any of the supplemental disclosures over the course of discovery. Instead, these documents were provided in a Fifth Supplemental Disclosure submitted after the close of discovery. Ms. Fox and Stageline contend Ms. Zilinskiy and Mr. Makarchuk acknowledged the document United Shippers referred to as a Truck Manifest was in fact a Bill of Lading and the only document EEZ received. Ms. Fox and Stageline conclude the submission of the four alleged Bills of Lading creates a question of fact prohibiting summary judgment.

United Shippers asserts it attached the four Bills of Lading to correct Ms. Fox and Stageline that the document they were referring to as a Bill of Lading was actually a Truck Manifest. United Shippers again referenced the *Loyd* case, which held the plaintiff's negligent hiring claim "directly relate[d] to the services AGS provided as a broker in the transportation of property. Thus, Plaintiff's claim is expressly preempted by § 14501(c)(1) of the FAAAA." *Loyd*, 416 F. Supp. 3d at 1295–98. Also in the *Loyd* decision:

> The Court finds, however, that reading the safety exception to include a negligence claim like the one asserted here – alleging that AGS overlooked Salazar's "conditional" rating as a motor carrier and selected an unsafe motor carrier that used incompetent or careless drivers and entrusted its vehicles to such drivers – would be an unwarranted extension of the exception to encompass a safety regulation concerning motor carriers rather than one concerning motor vehicles.

*Id.* at 1300 (internal citation omitted). Finally, United Shippers reasserts it did not exercise control over EEZ's movements or operations, nor did Mr. Makarchuk call them directly. United Shippers, according to it, was not a freight forwarder.

### 5.  Court's Analysis

All the allegations Ms. Fox and Stageline make against United Shippers in their complaint are based on the argument United Shippers acted as a freight forwarder for the load EEZ was transporting at the time of the collision. ECF No. 1. Ms. Fox and Stageline concede that if the Court finds United Shippers was acting as a broker, summary judgment is appropriate. The trouble for them is they have not presented any evidence creating a material dispute of fact that United Shippers was acting as a freight forwarder instead of a broker. While Ms. Fox and Stageline bash the "self-serving" Ferlito Affidavit, they do not contend their own expert (or anyone) found United Shippers was acting as a freight forwarder. United Shippers is correct that Ms. Fox and Stageline have misidentified the Truck Manifest as a Bill of Lading. They also cite Ms. Zilinskiy's deposition testimony in a misleading way by including her statement United Shippers owned the load but excluding her immediate correction saying she was not sure who owned it. Her deposition testimony indicates she was not sure who owned the load because she had to ask clarification about what "owned the load" meant and after saying STC owned the load, she immediately corrected herself.

The claims at issue are Count One: Negligence, Count Two: Respondeat Superior, and Count Three: Negligent Hiring, Training, and Entrustment. ECF No. 1 at 6–9. United Shippers notes Ms. Fox and Stageline retained Larry Baareman as a Commercial Motor Vehicle Safety and Compliance Expert and Greg Edgcombe as an Accident Reconstruction Expert but neither offer any opinion regarding United Shippers in their respective reports. ECF Nos. 67 at 4; 67-3; 67-4. Ms. Fox and Stageline do not challenge this contention. *See generally* ECF No. 70. However, defense expert Roger Allen opines that United Shippers was not responsible for the collision. ECF Nos. 67 at 4; 67-7. Defense accident reconstruction expert Alan Asay offers no opinions

indicating United Shippers caused the accident. ECF Nos. 67 at 4; 67-8. United Shippers

contends Ms. Fox and Stageline did not depose any representatives of United Shippers. ECF No.

67 at 5. Ms. Fox and Stageline do not respond to this contention. *See generally* ECF No. 70.

   The undisputed evidence shows United Shippers was acting as a broker for the transaction at

issue. At the time of the accident, EEZ and United Shippers had a Broker-Carrier Agreement in

place. ECF No. 67, Exhibit J. In the agreement, EEZ was identified as the carrier, and United

Shippers was identified as the broker. *Id.* Mr. Allen believed United Shippers was acting as a

broker. ECF No. 67, Exhibit L, Allen Dep. at 65:08–68:05. Maryana Zilinskiy refers to United

Shippers as a broker. ECF No. 67, Exhibit M, Zilinskiy Dep. at 83:01–85:08. Frank Ferlito, Vice

President of Business Development for STC Logistics, stated in an affidavit that STC was acting

as the broker under United Shippers' Broker License. ECF No. 67, Exhibit K, Ferlito Affidavit.

In his affidavit, he notes the pick-up location for the load was not an STC facility, which also

supports that someone else may have packaged and sealed the load. *Id.* Under the Broker-Carrier

Agreement, United Shippers did not assume any affirmative safety duties, and EEZ was required

to furnish its own equipment. ECF No. 67, Exhibit J. The agreement does not contain any

provisions granting United Shippers any right of control over the premises where the work is to

be performed. *Id.* It does not require EEZ to devote all its efforts to working exclusively for

United Shippers. *Id.* Ms. Zilinskiy testified EEZ had not previously hauled any loads for United

Shippers prior to the load it was hauling at the time of the accident. ECF No. 67, Exhibit M,

Zilinskiy Dep. at 83:14–18; 87:13–17. She did not recall whether EEZ transported any loads for

United Shippers after the accident. *Id.* at 88:11–14. She also testified usually someone from EEZ

would serve as the broker's point of contact, and the broker would not directly communicate

with the driver. *Id.* at 83:19–84:10.

The Court reviewed the briefs, attachments, and case law. As a first attachment, Ms. Fox and Stageline attach the complaint, which is not evidence. ECF No. 70-1. They next attach the Report of Greg Edgcombe. ECF No. 70-2. This report contains nothing of value in answering the question of whether United Shippers was a freight forwarder, a broker, or otherwise liable for the accident. *See generally id.* The third attachment is a company snapshot which identifies United Shippers as a "freight forwarder/broker[.]" ECF No. 70-3. This does not create a dispute of fact. United Shippers admitted it had separate licenses for work it conducted as a broker and work it conducted as a freight forwarder. This snapshot says nothing about the transaction at issue. Ms. Fox's and Stageline's fourth exhibit is the Truck Manifest they contend is a Bill of Lading. ECF No. 70-4. The fifth document is the Rate Confirmation. ECF No. 70-5. The Rate Confirmation states:

> DO NOT STACK OR HANDLE FREIGHT
> DO NOT BREAK SEAL
> IF FREIGHT IS STACKED OR HANDLED, <u>STC WILL NOT PAY</u>.

*Id.* The Rate Confirmation also states a "$150 penalty will be assessed if STC is <u>NOT</u> notified prior to a late or missed delivery." *Id.* The penalty here is for lack of notification, not being late. *Id.* The document does not state who packaged, assembled, or handled the freight. *See id.*

For their sixth attachment, Ms. Fox and Stageline attach one page of Ms. Zilinskiy's deposition. ECF No. 70-6. This is where they provide part of her answer on who owned the freight without providing her clarifying response. *Id.* With regard to Ms. Fox's and Stageline's contention during oral argument that Ms. Zilinskiy identified the Truck Manifest as a Bill of Lading, her deposition does not support that. When counsel asks about the document at issue, he begins by saying "Now in discussing with your brother yesterday, Exhibit 8 was a copy of what I've been told is the Bill of Lading." ECF No. 67-13, Zilinskiy Dep. at 85:15–17. Counsel does

24

not ask Ms. Zilinskiy if it is in fact a Bill of Lading or if she even knows what a Bill of Lading is. Ms. Zilinskiy testified it was the only document she had, not that it was a Bill of Lading. *Id.* at 85:23–24. In fact, she even states, "I'm not sure what you're trying to ask me." *Id.* at 86:6. Ms. Zilinskiy does not confirm the asserted Truck Manifest is a Bill of Lading.

Ms. Fox's and Stageline's seventh exhibit is a short excerpt of Mr. Makarchuk's deposition. ECF No. 70-7. In this, he states he does not know anything about EEZ's relationship with United Shippers or whether the load was sealed but believes he "closed the doors." *Id.* Exhibit eight is an excerpt from Roger Allen's deposition. ECF No. 70-8. He explains the difference between a freight forwarder and a broker. *Id.* In this excerpt, counsel for Ms. Fox and Stageline refer to United Shippers as the freight forwarder without ever asking Mr. Allen (at least in this part of the deposition) his opinion on whether United Shippers was, in fact, acting as a freight forwarder for this transaction. *Id.* Ms. Fox and Stageline have not presented any evidence creating a dispute that United Shippers was acting as a broker. In a different part of his deposition, Mr. Allen states he believes United Shippers was acting as a broker. ECF No. 67-12 at 67:13–68:4.

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal quotation marks and citations omitted). "Unsupported conclusory allegations thus do not create a genuine issue of fact." *Jarvis v. Potter*, 500 F.3d 1113, 1120 (10th Cir. 2007) (internal quotation marks omitted). Ms. Fox and Stageline have failed to present a material question of fact that United Shippers was

acting as a freight forwarder instead of a broker. They concede summary judgment is appropriate if United Shippers was acting as a broker. Thus, the Court grants United Shippers' Motion.

## Conclusion

It is **HEREBY ORDERED** United Shippers Associates, Inc.'s Motion for Complete Summary Judgment (ECF No. 67) is **GRANTED**.

Dated this __3ᵈ__ day of June, 2021.

Alan B. Johnson
United States District Judge